# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CT-00297-SCT

*LEO HARRIS*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 3/10/92 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. RICHARD JOHNSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/4/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Harris, on Petition for Writ of Certiorari, asks that this Court reverse a unanimous Court of Appeals decision by which that court affirmed his conviction and sentence of sixteen years for possession of cocaine with intent to distribute. His petition lacks any basis for review; we write today only in recognition of the need to develop guides and standards for this state's new appellate system.

¶2. The Court of Appeals initially issued an opinion which would have reversed Harris' conviction, but one day later, recalled that opinion *sua sponte* and issued another opinion affirming. The only issue raised by Harris is whether the Court of Appeals erred in recalling its initial opinion one day after it was handed down but prior to the issuance of the mandate. He cites no authority on that question, and this Court has held that it need not address issues submitted without supporting authority. *Matter of Estate of Mason v. Fort*, 616 So. 2d 322, 327 (Miss. 1993). Thus, this Court should not and does not consider Harris's claim on this one asserted ground for certiorari.

¶3. As Mississippi's present appellate system is still in its infancy, we have had little opportunity through case law to develop the standards of certiorari review which were established in the statutes and in the Mississippi Rules of Appellate Procedure. It is hoped that today we will contribute to that development. Certiorari is not a matter of right, and is to be considered only after the petitioner has sought review of the Court of Appeals decision by way of a petition for rehearing in that court, filed within fourteen days of entry of its judgment, unless additional time is allowed. That petition is a jurisdictional prerequisite for certiorari review by this Court. To hold otherwise would be to deny finality to Court of Appeals decisions, contrary to the express declaration of finality in M.R.A.P. 17(a) and Miss. Code Ann. § 9-4-3(2)(Supp. 1996).

¶4. While the jurisdiction of the Court of Appeals is limited solely to those cases assigned to it by this Court, once such an assignment is made, that court considers and disposes of each case not by way of a preliminary review but as a fully empowered appellate court. Except as to those cases which by statute must be retained by this Court, no litigant has a right to further review by certiorari. Although Rule 17(a) provides a list of issues as to which review will ordinarily be limited, this Court may grant or decline to grant certiorari solely in its discretion. Furthermore, it is the obligation of the petitioner to state in the petition for certiorari the precise basis on which review is sought. See M.R.A.P. 17(a), (b). One who seeks successive review from this Court must comply with the formal and temporal requirements of the rules.

¶5. Harris did not seek a timely rehearing, nor has he set forth any cognizable ground for certiorari. After recalling its first opinion, the Court of Appeals issued a subsequent opinion which was entered on May 16, 1995. Having become informed of that decision, Harris on June 22, 1995 filed a pro se motion with this Court seeking suspension of the Rules under M.R.A.P. 2(c). In that motion Harris stated that his attorney had failed to advise him of the later decision, which he learned of through the news media. That motion was assigned to the Court of Appeals upon finding that it was in the nature of a motion for leave to file a petition for rehearing out-of-time. Thereafter, on September 22, 1995, Harris filed with the Court of Appeals a pro se motion which he characterized as a motion to show cause, in which he asserted that his lawyer "appears to have relinquished his duty to represent Mr. Harris any further in this matter." The Court of Appeals, treating that motion too as one seeking leave for an out-of-time petition for rehearing, denied it. That order was entered on October 31, 1995. On December 8, 1995, Harris, pro se, filed his petition for certiorari.

¶6. Harris's case has received a full appellate review by the Court of Appeals on the record and briefs of counsel. He was entitled to and had appellate counsel before that court. That was his right. Miss. Code Ann. § 99-35-101 (Supp. 1994), provides that any person convicted in circuit court has a right to appeal to the Supreme Court, except when the conviction is upon a plea of guilty. *Harden v. State*, 460 So. 2d 1194, 1200 (Miss. 1984). Under our present appellate scheme, all appeals are to this Court, but are subject to assignment to the Court of Appeals. Miss. Code Ann. §§ 9-4-1 to 17 (Supp 1996). (See discussion of the appellate structure in *Marshall v. State*, 662 So. 2d 566 (Miss. 1995)). Furthermore, where states have incorporated appellate review as an integral part of the system for final adjudication of guilt or innocence, that review is raised to the plane of federal due process and equal protection. *Evitts v. Lucey*, 469 U.S. 387, 392 (1985); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956).

¶7. Harris urges that his failure to seek timely rehearing and certiorari was the result of his attorney's

failure to notify him of the decision by the Court of Appeals. In effect, he argues that the rules should be suspended due to ineffectiveness of his counsel who he charges with failure to properly represent him after this case was reviewed by the Court of Appeals. In this, his underlying premise--that he is entitled to counsel in pursuing further discretionary review by this Court--is flawed. The right to appointed counsel in criminal proceedings is not without limits; it is in fact limited by the statute which defines that right, Miss. Code Ann. § 99-15-15 (Rev. 1994). That section declares:

> When any person shall be charged with a felony, misdemeanor punishable by confinement for ninety (90) days, or more, or commission of an act of delinquency, the court or the judge in vacation, being satisfied that such person is an indigent person and is unable to employ counsel, may, in the discretion of the court, appoint counsel to defend him.

> Such appointed counsel shall have free access to the accused who shall have process to compel the attendance of witnesses in his favor.

> The accused shall have such representation available at every critical stage of the proceeding against him *where a substantial right may be affected.*

(emphasis added).

¶8. The crucial portion of the statute, for present purposes, is the limitation of appointment of counsel to those stages where a substantial right of the defendant is involved. Neither the protection guaranteed by the United States Constitution nor the examples found in sister states which allow only discretionary appellate review mandate appointment of counsel for such further review, or for its perfection. After a careful examination of those authorities, we conclude that this Court should not require continued assistance of appointed defense counsel where the defendant in criminal proceedings seeks certiorari.

¶9. In ***Ross v. Moffitt***, 417 U.S. 600 (1974) (citing ***Douglas v. California***, 372 U.S. 353 (1963)), the United States Supreme Court held that although the Fourteenth Amendment requires appointed counsel on the first appeal for indigent defendants, it does not require appointed counsel to indigent defendants seeking discretionary, second-tier, appellate review. *See **Wainwright v. Torna***, 455 U.S. 586 (1982) (holding that since, under ***Ross*** the appellant had no constitutional right to counsel on a discretionary appeal, he was not deprived of effective assistance of counsel by his retained counsel's failure to timely file an application for certiorari in the Supreme Court of Florida). In ***Ross****,* having found that the North Carolina appellate system provides for review by the Court of Appeals as a matter of right and further review by the Supreme Court as discretionary, the Court then looked to the state statute providing for appointment of counsel and found that, as interpreted, it did not go beyond the mandate of ***Douglas***, requiring appointment only as to appeals which are matters of right. In ***Wainwright***, it was urged that the appellant's retained counsel had promised to seek certiorari in the Supreme Court of Florida, that he failed to file the petition, and that it was Torna's reliance on that promise and the attorney's failure to fulfill it that prevented Torna from filing a timely pro se petition. The United States Supreme Court declared directly and clearly that because he had no absolute right to further appeal to the Supreme Court of Florida, he was not constitutionally entitled, constitutionally, to counsel and could not, therefore, be deprived of a constitutionally based right to effective counsel. ***Id****.* at 587-88. More recently, the United States Supreme Court, in ***Austin v. United States***, 115 S. Ct. 380 (1994), held that appointed counsel is under no obligation to file a

petition for certiorari if such petition would be frivolous, and in fact, that such filings are forbidden by the Supreme Court's own rules. The United States Supreme Court also stated in *Anders v. California*, 386 U.S. 738 (1967) that an appellant's right to have a brief filed on his behalf by an attorney did not extend to forums for discretionary review. *Austin*, 115 S. Ct. at 381. *See also United States v. Ferrell*, 730 F. Supp. 1338 (E.D. Pa. 1989) (alleged failure to notify appellant that Third Circuit had affirmed conviction could not rise to the level of a constitutional violation).

*¶10.* States with systems of discretionary further review by their highest courts, generally conclude, in the absence of a special state statute or rule, that there is no right to counsel beyond the initial, mandatory, appellate consideration. Alabama guarantees, as a right, an appeal to the Court of Criminal Appeals of Alabama. However, since certiorari to her Supreme Court is discretionary, Alabama holds that there is no meritorious claim of ineffective assistance of counsel by failure of the attorney to file a petition for writ of certiorari. *Jackson v. State*, 612 So. 2d 1356 (Ala. Cr. App. 1992); *Cunningham v. State,* 611So. 2d 510 (Ala. Cr. App. 1992).

¶11. Regarding the issue of whether counsel is even required to file a petition for rehearing, in *Kinsey v. State*, 545 So. 2d 200 (Ala. Cr. App. 1989), the Court of Criminal Appeals of Alabama held that rehearing before that court is likewise a matter of discretion to which the right of counsel did not attach. The court, relying on *Ross* and *Wainwright* found the dispositive question to be "whether a rehearing in the Alabama Court of Criminal Appeals is a matter of right or a matter of discretionary review." The court noted that by statute all persons convicted of criminal offenses have a right to appeal to the Court of Criminal Appeals; and that any subsequent review is by writ of certiorari to the Supreme Court of Alabama. The court concluded that "a rehearing by this Court lies somewhere between a defendant's first appeal as a matter of right and a subsequent discretionary review." *Kinsey*, 545 So. 2d at 203.

¶12. In *Patty v. State*, 652 So. 2d 337 (Ala. Crim. App. 1994) it was also held that failure to file a petition for rehearing before the Court of Criminal Appeals would not provide a claim of ineffective assistance of counsel in view of the discretionary nature of rehearings. The case at bar is markedly similar to *Kinsey*. As in *Kinsey* and *Patty*, our appellate rules contemplate discretionary second-tier appellate review; there is no Mississippi statute or rule which grants rehearing as a matter of right.

¶13. In 1974, the Supreme Court of Florida held that an attorney's failure to seek a writ of certiorari or alternatively to notify his client of his right to apply for it does not constitute a violation of the client's right to appeal. In so doing, that Court specifically held that certiorari is limited to specific situations and is discretionary with the Court. *Rhome v. State*, 293 So. 2d 761 (Fla.1974). Shortly thereafter, the Fifth Circuit took a contrary view where a prisoner sought federal habeas corpus relief from a conviction in state court. *Pressley v. Wainwright*, 540 F.2d 818 (5th Cir. 1976), *cert. denied*, 430 U.S. 987 (1977). Pressley's conviction had been affirmed by a split panel of the Florida District Court of Appeals. His court-appointed counsel failed to file a timely petition for certiorari, and thus, failed to preserve his right to review under the Florida Rules of Appellate Procedure. Holding that Pressley's right to petition for certiorari was frustrated by ineffective assistance of counsel, the Fifth Circuit, affirming the federal district court, conditionally granted the writ of habeas corpus.

¶14. *Torna v. Wainwright*, 649 F.2d 290 (5th Cir. 1981), grew out of the assertion that the failure of counsel to file a timely petition for certiorari with the Supreme Court of Florida was a deficiency so

gross as to render the proceedings fundamentally unfair. The United States District Court denied Torna's petition for habeas corpus, finding that the attorney's action only prevented Torna from applying for further discretionary review, and the Fifth Circuit reversed, citing its own decision in *Pressley*. *Torna v. Wainwright*, 649 F.2d 290 (5th Cir. 1981). In reversing the Fifth Circuit Court of Appeals, the United States Supreme Court said:

> In *Ross v. Moffitt* this Court held that a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court. Respondent does not contest the finding of the District Court that he had no absolute right to appeal his convictions to the Florida Supreme Court. Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely. The District Court was correct in dismissing the petition.

*Wainwright*, 435 U.S. at 557-58. (citations omitted) Under these decisions, a party, in Florida has neither a state based nor a federally constitutionally mandated right to claim a violation of his appellate rights when his attorney has failed to preserve his opportunity to seek discretionary review by the Supreme Court of Florida.

¶15. In Georgia, certiorari was granted in *Wooten v. State*, 266 S.E.2d 927 (Ga. 1980) in order to decide whether appointed counsel has the duty to apply for a writ of certiorari after the conviction has been affirmed by the Court of Appeals. Citing *Strozier v. Hopper*, 216 S.E. 2d (Ga. 1975) and *Ross v. Moffitt* at 417 U.S. 616, the Georgia Supreme Court found that there is no such duty. *Wooten*, 266 S.E.2d at 927

¶16. In *Foy v. State*, 844 P.2d 744 (Kan. 1993), the Court of Appeals of Kansas, relying on *Wainwright*, rejected Foy's claim of ineffective assistance of counsel based upon the failure of his appointed attorney to inform him that he could seek review in the Supreme Court of Kansas. Foy's claim that he had been denied a due process right of access to the state's appellate courts was also denied. The court also held that Foy had no constitutional right to pursue a discretionary appeal to the Supreme Court of Kansas and was not deprived of effective assistance of counsel by counsel's failure to file a petition for review.

¶17. In *Talley v. Maggio*, 451 So. 2d 1358 (La. Ct. App. 1984), referring to the state constitution and right to counsel, the Court of Appeals of Louisiana found that the failure of appellate counsel to inform the appellant when to apply for further review through rehearing or writs does not constitute ineffective assistance of counsel. The court also found that although there was a right to judicial review under the Louisiana constitution, Talley "had already received the benefit of that right by his appeal to the Court of Appeals." The court concluded that since there was no constitutional right to further review, the failure to inform Talley of when to apply for such review was not a deprivation of the right to counsel.

¶18. Colorado reaches a different conclusion, but only after consideration of her own statutes and rules. There, although review on certiorari may be considered discretionary, the filing of a petition for rehearing and a petition for certiorari are rights, and an attorney's failure to pursue the filing constitutes ineffective assistance. *People v. Valdez*, 789 P.2d 406 (Colo. 1990) (holding that, in that case, the failure was not prejudicial.) *See also People v. Williams*, 736 P.2d 1229 (Colo. 1986)

(recognizing that the filing of a petition for rehearing is a matter of right.) In *Valdez v. Gunter*, 768 F. Supp. 299 (D. Colo., 1991), the United States District Court for the District of Colorado reviewed Valdez's claim on a petition for habeas corpus. That court held that whatever right there may be to file the petitions under state law, such right was not mandated by the federal constitution.

¶19. In Tennessee, through legislation, rule making and decisions, a system exists whereby a defendant in a criminal case is given some degree of right to counsel on certiorari review. In *Hutchins v. State*, 504 S.W.2d 758 (Tenn. 1974) the Supreme Court of Tennessee held that under its statutes, particularly T.C.A. 40-2018 (Orig. ed.) providing that appointed counsel shall represent the defendant "at all stages" of the proceedings before the appointing court and upon "any appeal," the right to appellate counsel extends through certiorari review. The court observed the similarity of that language and that of Fed. Rules Crim. Proc. 44(a) (requiring counsel "at every stage of the proceeding . . . through appeal") and the Criminal Justice Act, 18 U.S.C.§ 3006A(c) (also requiring counsel "at every stage" through appeal including ancillary matters), and correctly pointed out that the federal courts have held that language to guarantee counsel through certiorari review. Soon thereafter, that court observed that *Hutchins*, decided, of course, prior to *Ross*, rested "on the implicit expectation that the United States Supreme Court would require that the state track the federal system by mandating lawyer prepared certiorari petitions for indigent defendants at the second tier discretionary level." *State v. Williams*, 529 S.W.2d 714, 716 (Tenn. 1975). In 1976 the statute was amended to provide that "appointed counsel . . . is not required to pursue the matter through a second tier discretionary appeal, by applying to the supreme court for writ of certiorari." Acts 1965, ch. 217, § 5; 1796, ch. 645, § 1; T.C.A. 40-2018 (Orig. ed.); T.C.A. 40-14-203 (Rev. 1990); *Tolliver v. State*, 629 S.W. 2d 913 (Tenn. 1981). In *Tolliver*, it was held that, due to the express provisions of Rule 14 of the Tennessee Supreme Court Rules, an indigent's counsel is required, in order to withdraw after a final adverse decision in the Court of Criminal Appeals, to take certain formal steps including advising the defendant of the right to file a pro se application for permission to appeal to the Supreme Court of Tennessee.

¶20. In Texas, there is also no right to counsel on petition for certiorari. *Peterson v. Jones*, 894 S.W.2d 370 (Tex. Crim. App. 1995) (holding that court appointed-counsel who files a petition for certiorari is not entitled to compensation); *Ex parte Jarrett*, 891 S.W. 2d 935 (Tex. Cr. App. 1994); *Ayala v. State*, 633 S.W.2d 526 (Tex. Crim. App. 1982). Texas, however, does subscribe to the minority view that there is a duty on the part of appellate counsel to advise the client of his right to seek certiorari pro se, and that failure to so notify will constitute a deprivation of his right to apply for such additional review. *Jarrett*, 891 S.W. 2d at 939.

¶21. Mississippi has neither statute nor rule which would compel the appointment of counsel in a second-tier review. Rule 6(b)(1) of the Mississippi Rules of Appellate Procedure concerns appointed counsel on appeal being required to continue unless relieved by order of the trial court prior to perfection of the appeal, or by order to this Court after perfection of the appeal. Rule 46 addresses withdrawal of appellate counsel. These rules do not, however, address the duty of counsel as to discretionary second-tier appellate review. If it should be determined that such continued representation is to be required, that should be accomplished by amendment of Rule 6 or by statute, not by stretching the application of existing rules.

¶22. Appointed counsel is not required by our constitution, statutes, or rules at the post-conviction

relief stages of the appellate process, even though there is a right to file such proceedings. In ***Neal v. State***, 422 So. 2d 747 (Miss. 1982), this Court held that an appellant's right to counsel exists only during the direct appeal; thus, an indigent prisoner seeking post-conviction relief was not entitled to appointed counsel. Why, having refused to extend the right to counsel on post-conviction relief cases, would this Court proceed to extend counsel to the discretionary second-tier appellate level, such as the filing of petitions for rehearing before the Court of Appeals and petitions for writ of certiorari before this Court? Unnecessarily adopting such a practice would absolutely overwhelm the public defenders, especially those in small, less populated, rural counties.

¶23. In summary, there is no right based in the United States Constitution to counsel on discretionary successive review of a state appellate court's decision. Although in federal prosecutions there is such a right, that right is grounded not in constitutional guarantees but specifically in the Criminal Justice Act and federal rules. There being no right to counsel in state discretionary review, there can be no challenge to the adequacy of counsel at that stage. The majority view, and in our judgment the prudent one, is that, in the absence of a specific state statute or rule, the failure of counsel to advise his client of the possibility of further review does not require suspension of the rules for an out-of-time consideration of a party's petition for writ of certiorari.

¶24. Those members of the Court dissenting from this opinion would suspend the rules in order to review an issue which was well considered by the Court of Appeals and as to which Harris does not seek certiorari review. Specifically, they are concerned that Harris may have been improperly denied the right to impeach a key witness during his trial. Only under the most extreme case should this Court ever consider addressing issues never assigned within the petition for certiorari, if we address the issues at all. It is only out of respect for their views that we write on that issue.

¶25. The issue herein surfaced due to an overnight revelation by Harris to his counsel of matters which had been known to Harris for several days--that is, of a prior conversation with Elmer Durrell, a State witness, wherein supposedly Durrell told Harris that the district attorney's office was pressuring him to testify by threatening him with revocation of his probation. Harris also revealed to counsel, for the first time, that he in fact had a taped recording of one of these conversations with Durrell. Harris, completely aware of all this, had remained silent during the direct and cross-examination of Durrell and never told defense counsel about these prior conversations with Durrell or the existence of the tape recording. After Durrell completed his testimony and had been cross-examined, he was excused by the court, without objection by the defendant. In addition to ruling that some foundation for the impeachment should have been laid by Harris's counsel, the trial court also held that Harris's failure to timely advise his counsel of the existence of the tape substantially caused or contributed to this problem to such a degree that Harris could not then complain that his rights were violated. This failure negates any argument that Harris was deprived of his rights.

¶26. In ***Government of Virgin Islands v. Martinez***, 642 F. Supp. 1571 (D. Virgin Island 1986), where Martinez failed to disclose facts concerning a confession made four days prior to trial to his attorney, the court held, "[t]he bottom line is that the confession was material to Martinez's defense solely because of his own untruthfulness. Under these facts, the established rule in this circuit is that independent discovery of the [nondisclosed *Brady* material] . . . negates any argument that the defendant was deprived of rights assured by the Constitution." ***Martinez***, 642 F.Supp. at 1583.

¶27. Harris's counsel could not lay a foundation for impeachment of Durrell solely because of the fault of Harris. Defense counsel Johnson admitted to the trial judge that he did not know about the prior conversations until after his cross-examination of Durrell. Johnson stated, "Otherwise, I would have cross-examined him on the stand about it." Nor did defense counsel reveal the tape pursuant to discovery requirements when trial commenced again the following day. He simply waited and attempted during Harris's direct testimony to elicit this information. Obviously concerned by the fact that Durrell had been released as a witness and had left the courtroom, as well as by the fact that Harris apparently had known this for days and failed to tell his own counsel, the trial judge noted that the impeachment testimony could not be offered "--unless you wanted to call Mr. Durrell back -- *and you didn't tell me to keep him, so I didn't keep him.*" (emphasis added)

¶28. The Court of Appeals correctly held that the trial judge committed no error in excluding Harris's impeachment testimony and the tape in view of his failure to lay a proper predicate and failure to disclose the tape. Under Rule 613 of the Mississippi Rules of Evidence, impeachment no longer requires the detailed prior examination of the party with a disclosure of the exact place, time, and persons present on the occasion of a prior inconsistent statement. However, this still requires a reasonable predicate to be laid and that extrinsic evidence be admitted for impeachment only where "the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interest of justice otherwise requires." M.R.E. 613(b).

¶29. The dissent would have us declare that the decision of the Court of Appeals is in conflict with *Marcum v. Mississippi Valley Gas Co., Inc.*, 587 So. 2d 223 (Miss. 1991) (overruled by *Whigham v. State*, 611 So. 2d 988 (1992))and *Whigham v. State*, 611 So. 2d 988 (Miss. 1992). But under both *Marcum* and *Whigham* there must be either some degree of predicate established or an opportunity for the declarant to fully explain or deny the supposed inconsistent statement, if that inconsistent statement is to be admitted in the first place. In *Whigham*, the Court stated that counsel for the appellant "surely knew prior to trial about the statements defendant sought to introduce" and that Whigham's counsel thus had the opportunity to lay a foundation for the introduction of evidence of a prior inconsistent statement. *Id.* at 994. Yet, in contrast, Harris's counsel was unaware of Durrell's statement and the tape at the time Durrell was on the stand; he thus had no opportunity to lay a foundation. As the Comment to Rule 613 states, it is "to allow for such eventualities as the witness becoming unavailable by the time the statement is discovered, [that] a measure of discretion is conferred upon the judge." It would be inappropriate and unwise for us to speculate as to whether Durrell could have been recalled as there is no evidence of any attempt to ascertain Durrell's availability for recall.

¶30. Rather than engaging in speculation, we should examine exactly what the record does reveal. In fact, the record reflects that Durrell had been released by the court at the conclusion of his testimony on the previous day. The record does not reflect an objection by Harris to Durrell's release as a witness. The case was recessed at that time until the following day. This is precisely a situation in which the trial judge "has discretion of admitting a pretrial inconsistent statement of a witness into evidence for which no predicate was laid of the witness, but only after the court has seen to it that the witness is available for recall, and given an opportunity to deny." *Whigham*, 611 So. 2d at 994. Here, the trial court released Durrell the previous day, without objection. In addition, because Harris had withheld vital information from his attorney, the trial judge's exercise of his discretion was

proper. This is especially applicable where there was no compliance with discovery to the State. The fault for this entire situation lies with Harris. We can see no reason why the State should be penalized for Harris's negligence or, if it was such, his tactical decision not to advise his counsel of the conversation or the tape.

¶31. In his brief before the Court of Appeals, Harris recasts the impeachment issue as one of a denial of cross-examination. In fact, considering the merits of the issue under the facts of this case, Harris was neither denied adequate cross-examination nor erroneously denied an opportunity to impeach the State's confidential informant. The record reflects that, not only was counsel afforded opportunity for complete cross-examination, counsel extensively and very effectively elicited from Durrell facts concerning Durrell's arrest, conviction, probation, an additional warrant for his arrest, pressure from the district attorney's office, the implication that his probation could be revoked if his testimony was not favorable, and that the prosecutor might not prosecute if Durrell testified against Harris. Counsel even accomplished the seemingly impossible. He succeeded in getting Durrell to confess to selling cocaine. This was a very effective cross-examination, which clearly presented the issues of involvement, motivation and bias of Durrell to the jury.

¶32. The decision of the Court of Appeals is affirmed.

**¶33. AFFIRMED.**

**PRATHER, P.J., ROBERTS AND MILLS, JJ., CONCUR. DAN LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PITTMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY LEE, C.J. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND IN PART BY LEE, C.J. AND McRAE, J.**

**DAN LEE, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶34. I agree with the majority's analysis of a litigant's right to certiorari and the majority's finding that a litigant has no constitutional right, under the United States Constitution, to counsel on discretionary successive review of a state appellate court's decision. I also agree that this Court should not address issues upon which the petitioner does not seek certiorari review. However, in the instant case, the Court chooses to address the issue of evidentiary requirements, although not addressed by Harris on petition for certiorari, and it is with this issue that I must part ways with today's majority. As to the evidentiary requirements issue, I join in and adopt the reasoning found in Part I of Justice Banks' dissent.

¶35. Accordingly, I respectfully concur in part and dissent in part.

**PITTMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶36. I concur with the majority's ruling on Issue I. However, I do not join that portion of the opinion analyzing the issue of whether Harris may have been improperly denied the right to impeach a key witness during his trial. It is not necessary for us to speak to this issue, because we are denying the out-of-time appeal.

¶37. Accordingly, I do not join that portion of the opinion.

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶38. I join the majority in results only on Issue I with regard to an indigent's right to counsel for his first appeal of right. However, I write separately to state that the right to counsel does not extend to a discretionary appeal taken after an opinion has been rendered in an appeal of right to this Court. Further, although we need not address the evidentiary rule since we are denying the out-of-time appeal, I join Justice Banks on his Issue I.

¶39. The constitutional right to appeal an unfavorable decision by the lower court is satisfied by the filing of a direct appeal to this Court. Because the Court of Appeals is an arm of this Court, the constitutionally mandated right of appeal is satisfied regardless of whether this Court hears the case or deflects it to the Court of Appeals for consideration. For that reason, I join the majority's Issue I in results only. Moreover, in looking to our Constitution to ensure that a criminal defendant's rights are protected, it is increasingly apparent that this and other decisions of this Court are presenting roadblocks to those seeking to pursue further relief in either the state or federal courts. State remedies must be exhausted before perfecting an appeal in the federal court system. Today's decision, however, does not make clear that a decision by the Court of Appeals is a final decision from which an appeal may be made in federal court or that the filing of a motion for post-conviction relief, a civil matter, should not be considered a requisite part of exhausting one's state remedies before proceeding in federal court.

¶40. Because of our statutes, an indigent criminal defendant has no right to appointed counsel when seeking a rehearing or petitioning for certiorari from the Court of Appeals to this Court. To go beyond the mandate of the Mississippi Constitution of 1890 and the "minimum federal requirements" articulated in **_Ross v. Moffitt,_** 417 U.S. 600 (1974), by extending the right to counsel to discretionary appeals only invites the review of *all* adverse criminal decisions emanating from the Court of Appeals, regardless of appointed counsel's or the public defender's opinion of the merits of the case.

¶41. There is nothing in the Mississippi Constitution, art. 3, sec. 26 that requires, either expressly or impliedly, the assistance of appointed counsel in a discretionary proceeding once an opinion has been

rendered in an appeal of right to this Court or the Court of Appeals. In *Ross*, the United States Supreme Court, likewise, found nothing in the Equal Protection or Due Process Clauses of the Fourteenth Amendment to the United States Constitution which mandated such representation. As that Court stated:

> The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.

*Ross,* 417 U.S. at 616. Finding that North Carolina's system for review of Court of Appeals cases by the State's Supreme Court provided an indigent defendant with an adequate opportunity to gain an audience with the State's highest court, the United States Supreme Court noted that the critical issue in North Carolina's determination of whether certiorari should be granted "as we perceive it, is not whether there has been a 'correct adjudication of guilt' in every case," but "whether 'the subject matter of the appeal has significant public interest,' whether 'the cause involves legal principles of major significance to the jurisprudence of the State,' or whether the decision below is in probable conflict with a decision of the Supreme Court." *Ross*, 471 U.S. at 615. Similarly, whether we would have rendered an opinion different from that of the Appellate Court on an adjudication of guilt by the trial court is not a guiding factor, rather "[s]uccessive review of a decision of the Court of Appeals by the Supreme Court will ordinarily be granted *only for the purpose of resolving substantial questions of law of general significance.*" Rule 17(a), Mississippi Rules of Appellate Procedure (emphasis added). Consistent with the certiorari review criteria noted with approval in *Ross,* M.R.A.P. 17(a) further provides that:

> Review will ordinarily be limited to:
>
> (1) cases in which it appears that the Court of Appeals has rendered a decision which is in conflict with a prior decision of the Court of Appeals or published Supreme Court decision;
>
> (2) cases in which it appears that the Court of Appeals has not considered a controlling constitutional provision;
>
> (3) cases which should have been decided by the Supreme Court because:
>
> (i) the statute or the rules require decision by the Supreme Court, or
>
> (ii) they involve fundamental issues of broad public importance requiring determination by the Supreme Court.
>
> Notwithstanding the presence of one or more of these factors, the Supreme Court may decline to grant a petition for certiorari for review of the decision of the Court of Appeals. The Court may, in the absence of these factors, grant a writ of certiorari.

Consistent with *Ross,* therefore, it cannot be said that by not requiring appointed counsel to initiate and represent an indigent defendant in a discretionary appeal, we are depriving that defendant the opportunity for meaningful appellate review.

¶42. The majority finds that rehearing and certiorari proceedings are "critical stages . . . where a substantial right may be affected" pursuant to Miss. Code Ann. § 99-15-15. In *Ross*, the Court, distinguishing the need for counsel in the trial phase as distinguished from the appeals process, stated

> it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, *it is clear that the State need not provide any appeal at all. McKane v. Durston,* 153 U.S. 684, 38 L.Ed. 867, 14 S.Ct. 913 (1894).

*Ross,* 417 U.S. at 610-611 (emphasis added). Moreover, the *Ross* Court indicated that "[t]he fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way." *Id.* at 611 (emphasis in original). By the same token, once an appeal has been heard by this Court or the Court of Appeals, since we have a deflective court system, the mandate to provide counsel to indigent defendants ceases. However, counsel, in his discretion, may elect to continue representation of his client by filing a petition for rehearing or certiorari. Whether to so proceed should be within the attorney's discretion rather than encouraging the court system to become further clogged by endless appeals.

¶43. In *State v. Barnes,* 517 S.W.2d 155 (Mo. 1974), where the Missouri Supreme Court found that it was not necessary to appoint a new attorney to represent an indigent client to assist in the pursuit of a motion for rehearing in the appellate court system, it was stated that:

> on a criminal appeal a motion for rehearing may be used, in the language of the *Ross* [*v. Moffitt*] case, as a "sword to upset [a] prior determination of guilt," but in practice it serves no such function. Statistical inquiry among the three districts of the Court of Appeals reveals that during the period roughly corresponding with the last reporting period, July 1, 1973, to June 30, 1974, some 298 criminal opinions were filed. Motions for rehearing or alternative motions for rehearing for transfer to the Supreme Court were filed in 71 of these 298 cases. Only two such motions were sustained. It is therefore clear, at least to us, that on a criminal appeal a motion for rehearing is merely an exhaustion device to seek discretionary review in the highest court of this state.

*Barnes,* 517 S.W. 2d at 169. Our two-tier appellate court system is still in its infancy. However, particularly where discretionary appeals are concerned, I suspect that we will find in practice that it, too, does not serve as the proverbial "sword to upset [a] prior determination of guilt."

¶44. Neither our Rules of Appellate Procedure nor our Rules of Professional Conduct require an attorney to file a discretionary appeal. Rule 1.4 of the Rules of Professional Conduct require an attorney only to keep his client informed, to respond to his requests for information and to explain matters to the extent necessary to help him make informed decisions. At best, that obligates the attorney to inform his client of a court's decision on his appeal and the ramifications of that decision. For these reasons, I join the Issue I of the majority opinion in results only and Issue I of Justice Banks' opinion.

**LEE, C.J., JOINS THIS OPINION IN PART**.

**BANKS, JUSTICE, DISSENTING:**

¶45. Because I disagree with the majority opinion in both its application of the evidentiary requirements of prior inconsistent statements as well as its conclusions about the duties of appointed counsel, I respectfully dissent.

## I.

¶46. During the defense case, Harris' attorney sought to impeach the testimony of Elmer Durrell by introducing evidence of a prior statement in which he had indicated that the prosecutor had threatened to revoke his probation if Durrell did not provide testimony in this case inculpating Harris. Because Harris' attorney was unaware of this statement while Durrell was testifying as a witness for the State, he was of course unable to introduce the statement or elicit a specific predicate in support of its later introduction during that cross-examination. The cross-examination of Durrell did, however, include the following exchange:

Q. Well, why you come in here today and testify under oath that you sold cocaine?

A. Because that's what I, you know--they subpoenaed me here as a witness. They wanted me to tell the truth, so I'm telling you.

Q. You are on probation, aren't you?

A. Yes, sir.

Q. Anybody forced you to give this testimony?

A. No, sir.

Q. When was the first time that you talked to the D.A.'s office about this testimony?

A. They subpoenaed me--what's today? Monday? I got a subpoena Thursday or Wednesday of last week. I'm not sure.

Q. When did you talk to them for the first time?

A. Thursday.

Q. You talked to them Thursday?

A. (Nodded head up and down).

Q. Did they tell you they had a warrant for your arrest?

A. No, sir.

Q. Did you know that there was a warrant for your arrest?

A. No, sir.

Q. Did anybody talk to you about having your probation revoked?

A. No, sir.

Q. So they wanted you to come in here and testify--did they know that you were going to say that you sold cocaine?

A. What do you mean, did they know?

Q. Did you tell them that you had sold cocaine earlier that day?

A. They asked me what had happened.

Q. Did you tell them you sold cocaine earlier that day?

A. Uh-huh (Indicating yes).

Q. Did they tell you they were going to prosecute you for that?

A. No, sir.

Q. So they told you if you'd come to testify, they weren't going to prosecute you for selling cocaine?

A. Nothing was ever said about that.

Q. You told them you sold cocaine that day?

A. Back in '90. Yeah.

Q. Well, did you understand there was a time limit where they couldn't prosecute you anymore?

A. No, sir.

¶47. Upon learning of Durrell's prior inconsistent statement that he had in fact been coerced into implicating Harris, Harris' attorney promptly attempted to get that statement introduced extrinsically, during his direct examination of Harris. In response to the State's objection, Harris' lawyer explained that Harris had just informed him of the prior inconsistent statement. Harris had also just produced to his attorney a tape recording of this conversation. Harris' lawyer wished to examine Harris about this conversation "without getting into the tape." He explained that since he had not known about the conversation or the tape at the time of his cross-examination of Durrell, he could not inquire about the conversation at that time.

¶48. The trial court ruled that Harris' testimony concerning the conversation was inadmissible hearsay. The court found that the testimony might have been admissible for impeachment purposes, had the proper foundation been laid. Because Durrell had not been specifically asked whether he had told Harris that he was being pressured by the district attorney's office to testify, the impeachment testimony was held inadmissible. The trial court also ruled the tape inadmissible, apparently on the same basis as its exclusion of Harris' testimony concerning the conversation.

¶49. In contrast with the majority opinion, I agree with Harris that his rights to confront, cross-examine, and impeach witnesses against him were violated by the trial court's refusal to allow him to testify about his conversation with Durrell. Because the State's case against him was so heavily dependent on Durrell's unimpeached testimony that linked him with the cocaine, I would hold the trial court's refusal to allow Harris to impeach Durrell by disclosing Durrell's motivation for testifying to be reversible error.

¶50. The use of a witness' prior statements for impeachment is governed by M.R.E. 613, which provides in part:

> (b) **Extrinsic Evidence of Prior Inconsistent Statement of Witness**. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Prior to the adoption of the Mississippi Rules of Evidence, Mississippi courts adhered to the formalism of *The Queen's Case*, 2 Br. & B. 284, 129 Eng. Rep. 976 (1820), requiring that a detailed foundation be laid before evidence of a contrary out-of-court statement could be admitted. A witness had to be asked "whether or not on a specific date, at a specific place and in the presence of specific persons he made a particular statement." *Whigham v. State*, 611 So. 2d 988, 994 (Miss. 1992) (citing pre-Rules case *Harrison v. State*, 534 So. 2d 175, 179 (Miss. 1988)).

¶51. However, the traditional foundation requirements have been modified by the modern rule of evidence. *Marcum v. Mississippi Valley Gas Co.*, 587 So. 2d 223, 226 (Miss. 1991).[1] The new rule gives "substantial latitude [to] an attorney seeking to impeach with prior inconsistent statements." *Id.* at 227. As the Comment to Rule 613 states:

> Subsection (b) preserves the foundation requirement in The Queen's Case with some modifications when impeachment is by extrinsic evidence. The traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party the opportunity to examine the statement, with no specification of any particular time or sequence.
>
> . . .
>
> In order to allow for such eventualities as the witness becoming unavailable by the time the statement is discovered, a measure of discretion is conferred upon the judge.

¶52. In *Marcum*, this Court found reversible error in a trial court's exclusion of a pretrial inconsistent

statement by one of the defendant/appellee's witnesses. We rejected the argument that the exclusion had been proper due to the plaintiff/appellant's failure to lay a foundation for extrinsic evidence, specifically, to cross-examine the witness concerning the conversation in which the statement allegedly occurred. We held that the plaintiff/appellant's failure to raise the subject on cross-examination of the witness should not have precluded the appellant from raising the apparent inconsistency by way of extrinsic evidence. Adopting authority analyzing the identical Federal Rule of Evidence 613(b), we stated that "the prior [inconsistent] statement may be brought out by a second witness *without prior inquiry* of the witness who made it. It is only necessary that the impeached party have an opportunity to explain or deny the statement *at some point during the trial.*" ***Marcum***, 587 So. 2d at 226.

¶53. More recently, in ***Whigham v. State***, 611 So. 2d 988 (Miss. 1992), we found no error in a trial court's exclusion of testimony sought to be introduced by the defendant for the purpose of impeaching one of the State's witnesses. The defendant wished to have one of his witnesses testify about pretrial inconsistent statements made by one of the State's witnesses. In that opinion, we upheld the trial court's exclusion of the testimony, noting that the State's witness was given no opportunity to explain or deny the pretrial statements, not having been asked about them while on the stand, and having already been excused. We noted that the defense counsel had surely known about the statements prior to trial. ***Whigham***, 611 So. 2d at 994. We nevertheless expressly reserved the possibility of situations in which a prior inconsistent statement should be admitted notwithstanding the fact that the proper foundation had not been laid:

> There may be instances in which a pretrial inconsistent statement of a witness will not be known until after the witness has left the stand. In such an instance a trial judge in the interest of justice may permit the introduction of such statement, but only after making sure that the witness is available for recall and is given an opportunity to explain or deny the statement.

> ***Id.***

¶54. In ***Whigham***, the defendant sought to introduce a prior inconsistent statement of a witness who had been excused. Significantly, we noted in ***Whigham*** that counsel for the appellant "surely knew prior to trial about the statements" defendant sought to introduce. Thus, counsel to Whigham had the opportunity to lay a foundation for the introduction of evidence of a prior inconsistent statement. In contrast, in this case Harris' counsel was unaware of both the prior inconsistent statement or the tape of that statement at the time Durrell was on the stand; he thus had no opportunity to lay a foundation. This fits precisely the exception to ordinary foundation requirements that is described in ***Whigham***, in which the trial court "has the discretion of admitting a pretrial inconsistent statement of a witness into evidence for which no predicate was laid of the witness, but only after the court has seen to it that the witness is available for recall, and given an opportunity to deny." ***Whigham***, 611 So. 2d at 994.

¶55. In short, ***Whigham*** does not overrule that aspect of ***Marcum*** that applies to Harris' case. Under ***Marcum***, Durrell's testimony could have been "brought out by a second witness *without prior inquiry of the witness who made it,*" ***Marcum***, 587 So. 2d at 226, because Durrell may well "have [had] an opportunity to explain or deny the statement *at some point during the trial." **Id.*** (emphasis added). Consequently, I would hold that the trial court erred in excluding Harris' testimony

concerning Durrell's pretrial statements on the grounds that no foundation had been laid. Under the mandate of both *Marcum* and *Whigham*, Durrell could have been recalled and thus provided with an opportunity to explain or deny the impeaching statements, which could then have been admitted.[2]

¶56. There is no evidence in the record that the trial court made any attempt to ascertain Durrell's availability for recall prior to excluding his prior inconsistent statement. Indeed, the record suggests only that Harris' counsel consented to Durrell's release as a witness before he knew about the prior inconsistent statement. I cannot, as the majority has, construe this void in the record as if Harris' counsel had the opportunity to lay the foundation, but nevertheless opted against it. Nor do I construe it to mean that Durrell was unavailable for recall. I would thus hold that the exclusion of Harris' testimony was an abuse of the discretion by trial court. *See Tillis v. State*, 661 So. 2d 1139, 1142 (this Court applies abuse of discretion standard in reviewing trial court ruling on admissibility of evidence).

¶57. Given the critical significance of Durrell's testimony in the prosecution of Harris, the principle of fundamental fairness entitled Harris to an opportunity to impeach Durrell with evidence that his inculpatory testimony was the product of coercion by the district attorney. *See Hill v. State*, 512 So. 2d 883, 885 (Miss. 1987) (holding that trial court should have permitted further inquiry into witness' expectations of lenient treatment from prosecutor in exchange for his testimony where state relied heavily on witness' testimony); *Fuselier v. State*, 468 So. 2d 45, 51 (Miss. 1985) (defense entitled to present evidence of agreement to jury where such would tend to impeach or show bias in the testimony of the witness); *Barnes v. State*, 460 So. 2d 126 (Miss. 1985) (defense is entitled to impeach or show bias in the testimony of a witness). I would therefore find the trial court's exclusion of Harris' testimony to be reversible error.

## II.

¶58. I also disagree with the majority opinion in its analysis of the responsibilities of counsel appointed to represent the indigent on appeal, and would hold that court-appointed counsel are required to notify their clients about the status of their appeals and the possibility of additional action.

¶59. On March 21, 1995, the Court of Appeals issued a unanimous opinion reversing and remanding Harris' conviction and sentence on the grounds that the trial court had improperly denied Harris an opportunity to impeach Elmer Durrell. On March 22, 1995, the Court of Appeals, on its own motion, entered an order withdrawing the opinion and judgment of the previous day and further stating that an opinion and judgment would be entered at a later date.[3] On May 16, 1995, the Court of Appeals issued a unanimous decision affirming Harris' conviction and sentence, finding that there had been no abuse of discretion in the trial court's unwillingness to admit the evidence of Durrell's prior inconsistent statement. Harris' counsel did not file a petition for rehearing.

¶60. By letter received by this Court Clerk's office on June 6, 1995, Harris, who was incarcerated, inquired as to the status of his case. He stated that he had learned from a newspaper article that a decision in his favor had been withdrawn, and that a new opinion would be entered at a later date. Harris requested a copy of all judgments in his case. The court sent him a letter stating that his case had been affirmed on May 16, 1995.

¶61. On June 22, 1995, Harris filed a pro se motion for suspension of rules, stating that his lawyer

had not informed him of the Court of Appeals' decision, and that had he known of the decision, he would have timely appealed to this Court. Harris requested that, pursuant to M.R.A.P. 2(c), this Court suspend the rules to give him "a fair opportunity to petition the court for a wrong done to him."

¶62. By order dated July 26, 1995, this Court assigned Harris' motion to the Court of Appeals, finding that the motion "appears to be in the nature of a request for leave to file a petition for rehearing out of time," and that the Court of Appeals retained jurisdiction of the matter. On September 22, 1995, Harris filed a pro se motion to show cause, headed in the Court of Appeals, which stated that his lawyer "appears to have relinquished his duty to represent Mr. Harris any further in this matter." Harris also requested that the Court of Appeals identify its reasoning and otherwise show cause for its actions. On October 31, 1995, the Court of Appeals issued an order finding that Harris' motion to show cause should be treated as a motion for permission to file an out-of-time petition for rehearing, and, as such, denied it, citing M.R.A.P. 40(a). A second order that day dismissed as moot Harris' motion to suspend the rules. On December 8, 1995, Harris filed his pro se petition for a writ of certiorari.

¶63. Absent the filing of a petition for rehearing, this Court lacks jurisdiction to entertain a petition for certiorari to review the Court of Appeals' judgment. *See* M.R.A.P. 17(b).[4] Thus, if appellant's counsel does not file a petition for rehearing, the appellant may be precluded from seeking review by this Court through a petition for writ of certiorari, even a petition filed pro se. *A fortiori*, if an appellant's counsel fails to *inform* his client that his intermediate appeal has been disposed of, that client will quite obviously miss the opportunity to pursue any further review that he may have independently undertaken, given the fourteen-day time period during which additional appeals are allowed.[5]

¶64. Before I address whether the law in the State requires appointed counsel to continue their representation of indigent defendants past the first tier of review, I must first note that I strongly believe that *advising* a client of the disposition of his first appeal of right is a duty that attends an attorney's competent representation of him at that level of appeal. Therefore, I firmly believe that the Sixth Amendment right to counsel and his effective assistance comprehends counsel informing his client that his cause was lost. Even if an indigent defendant has no federal constitutional right to seek further review of his claims, his federal and state constitutional right to effective assistance of counsel during the pursuit of that first appeal includes being informed of its disposition, just as it included being informed of all other significant events in the course of the proceedings against him. *Strickland v. Washington*, 466 U.S. 668, 688, 80 L.Ed.2d 674 (1984) (defense counsel has the "particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution"); *Douglas v. California*, 372 U.S. 387 (1963) (extending Sixth Amendment right to counsel and effective assistance of counsel to indigent defendants on their first appeal of right).

¶65. I also believe, contrary to the majority, that the law governing our system of appointment of counsel entitles indigents to appointed counsel in the pursuit of second-tier review, by way of petitions for rehearing or petitions for certiorari. The procedural history of Harris' case illustrates how inaction on the part of appellate counsel following a Court of Appeals decision can easily result in the forfeiture of not only an appellant's right to further review, but an appellant's right to *apply* for

further review. Such consequences violate the appellant's rights to effective assistance of counsel and due process under state law, and is entirely inconsistent with the responsibility of law practice.

¶66. The right to counsel in criminal cases is guaranteed by Art. 3, § 26 of the Mississippi Constitution, which provides in part that "[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both." *See also* **Watson v. State**, 196 So. 2d 893, 894 (Miss. 1967).[6] The accused is entitled to counsel not only at trial, but also on appeal from a conviction on the merits. **Jones v. State**, 355 So. 2d 89, 91 (Miss. 1978). If the accused is indigent and unable to afford an attorney, then he is entitled to a court-appointed attorney at trial and on appeal. **Id.**[7]

¶67. Appointment of counsel for indigents is governed by Miss. Code Ann. § 99-15-15 (1972), which provides:

> When any person shall be charged with a felony, misdemeanor punishable by confinement for ninety (90) days, or more, or commission of an act of delinquency, the court or the judge in vacation, being satisfied that such person in an indigent person and is unable to employ counsel, may, in the discretion of the court, appoint counsel to defend him.[8]

> Such appointed counsel shall have free access to the accused who shall have process to compel the attendance of witnesses in his favor.

> The accused shall have such representation available at every critical stage of the proceeding against him where a substantial right may be affected.

*See also* Miss. Code Ann. § 99-15-17 (1972) (statute setting forth the amount of compensation allowed to appointed counsel for trial and appellate work); **Wilson v. State**, 574 So. 2d 1338 (Miss. 1990) (upholding constitutionality of the limits on compensation set by § 99-15-17).

¶68. The right to counsel on appeal is further secured by M.R.A.P. 6(b) which governs the appointment of counsel in criminal appeals. Under Rule 6(b)(1), appointed trial counsel is required to continue as the defendant's counsel on appeal, unless relieved by order of this Court, the Court of Appeals, or the trial court, prior to perfection of the appeal. M.R.A.P. 6(b)(2) provides that an appellant without counsel on appeal, who is entitled to counsel on the basis of his indigence, and who has not waived the appointment of counsel, will be appointed counsel by the trial court upon request of this Court or the Court of Appeals.

¶69. M.R.A.P. 6 does not address the question of whether appointed counsel is to continue representation on direct appeal after affirmance of a conviction by the Court of Appeals--that is, whether there is a right to counsel in second-tier or discretionary appellate review. Since second-tier appellate review did not exist prior to the recent establishment of the Court of Appeals, this Court has not yet addressed this question.

¶70. The United States Supreme Court *has* addressed this question as it pertains to the federal constitutional right to counsel, and concluded in **Ross v. Moffitt**, 417 U.S. 600 (1974), that while the Fourteenth Amendment requires that indigent defendants be provided with appointed counsel on the first appeal of right it does not require that states provide appointed counsel to indigent defendants seeking discretionary, second-tier appellate review.[9] The Court in **Ross** noted that it was

fortified in this conclusion by [their] understanding of the function served by discretionary review in the North Carolina Supreme Court. The critical issue in that court, as [they] perceive it, is not whether there has been "a correct adjudication of guilty" in every individual case . . . but rather whether "the subject matter of the appeal has significant public interest," whether "the case involves legal principles of major significant to the jurisprudence of the State," or whether the decision below is in probable conflict with a decision of the Supreme Court.

*Ross*, 417 U.S. at 61 (citations omitted).

¶71. As this Court has previously noted, we are not limited to "minimum federal requirements . . . and may construe our own Constitution and laws to afford greater protections for an accused." *Killingsworth v. State*, 490 So. 2d 849 (Miss. 1986). While *Ross v. Moffitt* may hold that an appellant has no federal constitutional right to appointed counsel for the pursuit of a discretionary review, I would find that the right to counsel secured by Article 3, Section 26 of our State constitution includes the right to assistance of counsel in seeking rehearing in the Court of Appeals, as well as seeking a writ of certiorari in this Court.[(10)]

¶72. I would also find that such assistance of counsel is further mandated by Miss. Code Ann. § 99-15-15, which provides that the indigent "shall have . . . representation available at every critical stage of the proceeding against him where a substantial right may be affected." Review by this Court, although discretionary, is without question a stage of a criminal defendant's case at which a substantial right may be affected. A decision by the Court of Appeals or this Court may well be reversed on petition for rehearing; a decision by the Court of Appeals may be reversed by this Court on review by writ of certiorari. Indeed, our Rules of Appellate Procedure prescribe the scope of review in our court as significantly broader than the North Carolina scheme that prompted the United States Supreme Court's decision in *Ross v. Moffitt*: according to our Rules of Appellate Procedure, our review is proper not only where the cases pose issues of broad public importance, but is also proper in cases in which the Court of Appeals has rendered its decision in conflict with prior decisions, and cases in which the Court of Appeals has not considered a controlling constitutional provision. Additionally, we may grant certiorari for any other reason, including mere error correction. M.R.A.P. 17(a). In light of the substantial role of this Court's review in adjudicating and administering our criminal justice system, I would find that rehearing and certiorari proceedings are "critical stages . . . where a substantial right may be affected" and thus are attended by a right to counsel in the pursuit thereof.

¶73. Additionally, I note the United States Supreme Court's decision in *Evitts v. Lucey*, 469 U.S. 387 (1985), in which it held that where a state has created appellate courts as "an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant . . . the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." 469 U.S. at 392 (citing *Griffin v. Illinois*, 351 U.S. at 18). As I have previously discussed, discretionary review through rehearing or certiorari is an "integral part" of our appellate system in that it exists to correct errors, as well as to enunciate and reconcile the criminal law. I would thus find that application for rehearing or certiorari cannot, consistent with the concept of due process enunciated in *Evitts v. Lucy*, be denied to appellants who cannot afford to retain further counsel.

¶74. Moreover, I discern an important distinction between actual review on rehearing or by writ of certiorari, and the *application* for such review. Notwithstanding the discretionary aspect of our grant of certiorari review, all litigants are entitled to *seek* discretionary review through a petition for rehearing or for writ of certiorari. Thus, an *application* for rehearing or for certiorari is a *right* that all litigants automatically enjoy. Because the application for rehearing or for certiorari is a substantial right that our statutory scheme confers upon litigants, it ought not to be limited to those appellants able to retain counsel.

¶75. The Supreme Court of Colorado has recognized that application for discretionary review is a matter of right, and thus carries with it a right to counsel. In holding that an appellant was entitled to effective assistance of counsel in filing a petition for writ of certiorari after affirmance by an intermediate appellate court, the Supreme Court of Colorado stated:

> It has long been recognized that this court in the exercise of its appellate jurisdiction has absolute discretion to grant or deny a petition for writ of certiorari to review a final judgment of a lower tribunal. We have also recognized that under our rules of appellate procedure, as authorized by the grant of appellate jurisdiction contained in article VI, sec. 2(2) of the Colorado Constitution, a petition requesting this court to exercise its appellate jurisdiction to review a lower court judgment is an application of right. Thus Valdez had a right to file his application for certiorari review by this court of the judgment of the Court of Appeals. He therefore had a right to obtain counsel and to rely upon such counsel's skill for the purpose of preparing and filing that application.

*People v. Valdez*, 789 P.2d 406, 408 (citations omitted). *See also* **Colorado v. Williams**, 736 P.2d 1229 (Colo. Ct. App. 1986) (review by petition for writ of certiorari to the Supreme Court of Colorado is application of right, not discretion; thus, defendant had right under state constitution to effective assistance of counsel in the filing of a petition for rehearing in the Court of Appeals, which is prerequisite for application for writ of certiorari).

¶76. A number of other jurisdictions have deployed various authorities in noting that an appellant's right to file a petition for discretionary review may be jeopardized or even forfeited if appellate counsel does not maintain an active role of representation after an affirmance by an intermediate appellate court. In **Hutchins v. State**, 504 S.W. 2d 758 (Tenn. 1974), the Supreme Court of Tennessee reviewed in post-conviction proceedings a claim of ineffective assistance of counsel, where the appellant's court-appointed attorney had not filed a petition for writ of certiorari to the state supreme court after affirmance of the direct appeal by the Court of Criminal Appeals. The court stated:

> Under the facts in this case, the defendant's rights were violated at that stage of the proceedings at which his court-appointed attorney should have advised him of his additional avenues of appeal, and of the action the lawyer planned to take in the case. The attorney apparently abandoned his client without advice of any kind. Under these facts, the defendant was completely cut off from further appeal. Because of his attorney's action he was even denied to opportunity to file a pro se petition for certiorari before the statutory ninety days expired for filing the petition. His deprivation was just as complete as if he were required to pay for that which he could not afford, such as a filing fee or a transcript. **Burns v. Ohio**, 360 U.S. 252

[1959]; *Griffin v. Illinois*, 351 U.S. 12 [1956].

504 S.W.2d at 758.

¶77. Likewise, in *Ex Parte Jarrett*, 891 S.W.2d 935, 939 (Tex. Crim. App. 1994), the court found that while an appellant had no right to review by the Court of Criminal Appeals, the "appellant's right to file a petition for discretionary review may not be abridged by the actions of counsel." Therefore, the court held, pursuant to the state's rules of appellate procedure, counsel had a duty to notify the appellant of the actions of the appellate court; to advise the appellant of the effect of the court's opinion; to advise appellant of the possibility of review by certiorari; to express his professional judgment as to possible grounds for review and their merit; and to delineate advantages and disadvantages of further review. The court stated its rationale:

> [F]ailure to notify the appellant of the right to file a petition for discretionary review prejudices the rights of the appellant and constitutes a violation of the constitutional right to effective assistance of counsel. Appellant has no right to review, but Tex. R. App. P. 200 presumes appellant has a right to prepare and file a petition for discretionary review . . . . [W]e have held that due to the very fact that this provision exists there is a right to make a request to this Court. Therefore, if this right is abridged or denied through the misfeasance or nonfeasance of counsel there is an abridgment of the Sixth and Fourteenth Amendments through which the State benefits and the individual's rights are constitutionally curtailed.

891 S.W.2d at 956. *See also* *State v. Williams*, 529 S.W.2d 714 (Tenn.) (holding that *Hutchins* had not been overruled by *Ross v. Moffitt*); *Pinkston v. State*, 668 S.W.2d 676 (Tenn.Crim.App. 1984) (unilateral termination of a direct appeal following first-tier review entitled appellant to relief in form of delayed appeal, despite *Wainwright v. Torna*, since the Supreme Court of Tennessee had adopted "a different path as a matter of state law"); *Moultie v. State*, 542 S.W.2d 835 (Tenn.Crim.App. 1976) (noting that the lawyer's duty under ABA Standards to keep his client informed of the developments in the case is vital when the defense progresses to the point of actual termination).

¶78. Given the facts of this case, I am particularly concerned about the distinct probability that an appellant's right to discretionary review will be forfeited unless counsel is required to actively continue his representation after losing a first appeal. Even assuming that, unlike Harris, an appellant has been timely advised of the Court of Appeals' decision, and has also been advised of the option of filing for rehearing, he is unlikely to possess the knowledge necessary to identify and present any issues appropriate for rehearing without the assistance of counsel. It would be highly unrealistic to expect the appellant to prepare such a petition within the fourteen-day period, particularly if the appellant were incarcerated. In short, an unrepresented appellant is simply not in a position to preserve his right to seek discretionary review during the fourteen-day period in which petitions are ordinarily received. Absent counsel, he is highly likely to forfeit the opportunity to file a petition for rehearing, and with it, the opportunity to file a petition for certiorari.

¶79. It is counsel's obligation to ensure that his client's right to appeal is preserved. *Holland v. State*, 656 So. 2d 1192, 1198 (Miss. 1995); *Triplett v. State*, 579 So. 2d 555 (Miss. 1991); *Myers v. Mississippi State Bar*, 480 So. 2d 1080 (Miss. 1985), *cert. denied*, 479 U.S. 813 (1986). In *Triplett*, a retained attorney had failed to perfect his client's appeal for lack of payment and the attorney failed to request permission to withdraw from the case. We found that because the attorney had failed to

protect his client's right to appeal, the appellant had been denied effective assistance of counsel:

> Having contracted to pursue an appeal, it is incumbent upon an attorney to fulfill those obligations. *Cf. Allison v. State*, 436 So. 2d 792 (Miss. 1983). If grounds for withdrawal or termination exist, the attorney must seek the court's permission to properly withdraw from representation, but incumbent upon the attorney is the duty to take all necessary steps to protect the defendant's right of appeal.

> It is true that subsequent to trial and conviction of their clients, trial counsel may find themselves on the horn of dilemma, unsure whether or not to appeal. But the answer lies in the cloak of responsibility adorned by every criminal trial attorney when employment is accepted or appointment is made by the court. Unilateral withdrawal is manifestly not the solution. The problems of withdrawal may be more difficult than the British Army from Dunkirk, but the requirements prerequisite to termination of attorney/client relationship remain paramount. Our rules and case law mandate written court permission to withdraw from representation prior to completion of the contract. Nothing less will suffice.

579 So. 2d at 558.[11]

¶80. In *Holland v. State*, 656 So. 2d 1192 (Miss. 1995), we found that an attorney who neglected to renew a motion for directed verdict, request peremptory instruction, or file j.n.o.v. motion, waived for appeal the sufficiency of evidence issue. We held that in so doing, the attorney failed "to preserve defendant's entire line of defense on appeal," thus depriving defendant "of any meaningful appeal." We held this to be a denial of the Sixth Amendment right to effective assistance of counsel, citing *Triplett* for the proposition that "it is incumbent upon the attorney to take all necessary steps to protect the defendant's right of appeal." 656 So. 2d at 1198 (citing *Triplett*, 579 So. 2d 555, 558).

¶81. Our statutory procedures governing withdrawal of counsel further illuminate our concern that litigants not be unwittingly thwarted in their attempts to assert their rights. M.R.A.P. 46(c) provides as follows:

> (c) **Withdrawal**. An attorney who appears before the Supreme Court or the Court of Appeals in an appeal or other proceeding may withdraw from the representation only with the approval of the appropriate court. If an attorney desires to withdraw, the attorney shall file a motion giving the attorney's reasons for desiring to withdraw and requesting approval of the appropriate court. Such motion shall be served upon the attorney's client and upon all parties. The motion shall be accompanied by an appearance form of substitute counsel or a signed statement by the client indicating that the client agrees to proceed pro se, or shall explain why neither can be obtained.

¶82. Thus, I interpret the combined force of our statutory and decisional law to require appointed counsel to preserve their clients' rights to pursue appeals and rehearings. I find this to be the fairer and better reasoned approach to this gap in our positive law. I therefore dissent from the majority's analysis in this regard.

## CONCLUSION

¶83. In conclusion, not only would I find Leo Harris' right to counsel to extend beyond the Court of Appeals' decision on his first appeal, I reiterate my opinion that their judgment was incorrect. Leo Harris was denied the crucial opportunity to impeach Elmer Durrell with evidence of a pretrial statement by Durrell that indicated that his incriminating testimony was coerced by the district attorney. Because I would find this limitation of Harris' defense to be reversible error, I respectfully dissent from the majority's affirmance of Harris' conviction and sentence.

**SULLIVAN, P.J., JOINS THIS OPINION. LEE, C.J., AND McRAE, J., JOIN THIS OPINION IN PART.**

1. In *Marcum*, we noted that numerous authorities have observed this modification of traditional foundation requirements. *See* Weinstein, ¶ 613[01] to [05]; S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual*, 424-31(3d ed. 1982); McCormick on Evidence, § 34 (3d ed. 1984). *Marcum*, 587 So. 2d at 226.

2. Even had Durrell *not* been available for recall, Harris' testimony concerning Durrell's pretrial statements could have been admitted within the discretion of the judge. As the Comment to Rule 613 notes, "[i]n order to allow for such eventualities as the witness becoming unavailable by the time the statement is discovered, a measure of discretion is conferred upon the judge."

3. In a letter to this Court's Clerk dated March 29, 1995, Harris' lawyer stated that pursuant to the Clerk's instructions, he had destroyed the March 21st opinion mailed to him. Thus, Harris' counsel was plainly aware of the Court of Appeals' withdrawal of the first opinion and entry of the second opinion.

4. Pursuant to M.R.A.P. 2(c), the requirements of any of the Mississippi Rules of Appellate Procedure may be suspended for good cause.

5. I recognize that Harris' counsel may have declined to seek further review through a petition for rehearing, and a petition for writ of certiorari based on his opinion that grounds for rehearing and certiorari were lacking. Such decisions are a matter of professional judgment. I have no wish to single out for reproach the attorney in this case, especially since neither the Mississippi Rules of Appellate Procedure nor the Mississippi Code sections concerning appointment of counsel indicate whether appointed counsel is required to file a petition for rehearing, and a petition for certiorari if the appellant so requests.

6. Of course, the right to appointed counsel at trial is also guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

7. The United States Supreme Court has long held that there is no constitutional right to an appeal from a criminal conviction. *McKane v. Durston*, 153 U.S. 684 (1894). However, if a state has created appellate courts as "an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant," the procedures used in deciding appeals must comport with the requirements of the Due Process and Equal Protection clauses. *Evitts v. Lucey*, 469 U.S. 387, 392

(1985); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956).

8. The discretion of the trial court to decline to appoint counsel to represent an indigent defendant charged with a noncapital felony was eliminated by *Gideon v. Wainwright*, 372 U.S. 335 (1964). *See Conn v. State*, 251 Miss. 488, 170 So. 2d 20 (1964).

9. The United States Supreme Court has relied on *Ross v. Moffitt* in holding that where there is no right to counsel, there can be no right to effective assistance of counsel, and thus no violation of such right. *See Wainwright v. Torna*, 455 U.S. 586 (1982) (since, under *Ross v. Moffitt*, appellant had no constitutional right to counsel on a discretionary appeal, he was not deprived of effective assistance of counsel by his retained counsel's failure to timely file an application for certiorari in the Supreme Court of Florida.)

10. In *Neal v. State*, 422 So. 2d 747 (Miss. 1982), we held that an appellant's right to counsel exists only during the course of his direct appeal, and thus an indigent prisoner seeking post-conviction relief was not entitled to appointed counsel. We adhere to that holding today.

11. We also held in *Triplett* that where a defendant becomes indigent, an attorney must advise him clearly of his right to file a pauper's affidavit and proceed in forma pauperis.