587 So.2d 223 (1991)
Joseph P. MARCUM
v.
MISSISSIPPI VALLEY GAS COMPANY INC. and L.M. Mermelstein.
No. 89-CA-1340.
Supreme Court of Mississippi.
August 21, 1991.
Rehearing Denied November 6, 1991.
Roderick D. Ward, III, Lance L. Stevens, Stevens & Ward, Allen G. Woodard, Cherry, Givens, Tarver, Peters, Lockett & Diaz, Jackson, for appellant.
F. Hall Bailey, Lindsay C. Patterson, Wise Carter Child & Caraway, Jackson, for appellees.
*224 Before ROY NOBLE LEE, C.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County, Mississippi, wherein appellant, Joseph Marcum, brought suit against Mississippi Valley Gas Company and its employee Leo Mermelstein, appellees, for injuries received in an accident between Marcum's motorcycle and a Gas Company truck driven by Mermelstein. The jury entered a verdict for appellees. At trial the judge excluded a portion of appellant's evidence as hearsay. That evidence tended to impeach one of appellees' witnesses. Appellant challenges that ruling and additionally claims that the jury's verdict was against the overwhelming weight of the evidence. We reverse and remand for a new trial.

Statement of the Facts
This is a typical intersection type accident in which the plaintiff and defendant had two versions of the accident, and in which both parties claim to have had a green light. There were, however, two independent witnesses who testified: one for the plaintiff and one for the defendant. The case, in effect, hinged on the witnesses as well as the parties as to which version to believe. Thus the stage was set as to cross-examination of the witnesses to determine their credibility at trial.
The accident between the motorcycle and the gas company truck occurred at a "T" intersection controlled by a traffic light. The motorcycle was being driven by Marcus with a passenger, Jay Glass, on board. It was traveling on Terry Road. The gas truck was traveling on Woody Drive which dead-ended into a "T" into Terry Road. Marcum remembers seeing the light approximately seventy-five feet before he reached the intersection. It was green. Glass corroborated this testimony and added that the Gas Company truck never stopped as it approached the intersection. Both claim to have "blacked out" moments before the accident.
Leo Mermelstein, the driver of the Gas Company truck, testified that he came to the intersection and the light was red. When the light changed he said that he looked both ways and proceeded into the intersection. At that time he heard a "revving" noise and saw the motorcycle veering around the traffic which had stopped at the light. The motorcycle came into the intersection and hit the bumper of the truck.
Lee Lewis, another employee of the gas company, was in the passenger seat of the truck. He corroborated Mermelstein's testimony. Tony Hobson also was in the truck, situated in the "crew cab" of the truck, which is behind and separate from the driver and passenger cab. There is a small window into the driver's cab and two other small windows that allowed Hobson to see the side of the truck. Hobson remembers coming to the intersection and stopping. He couldn't see the traffic light, but he saw the other traffic that was travelling in the same direction as the motorcycle coming to a stop. He remembered the truck beginning to move and then suddenly stop. At that time he noticed the motorcycle pull around the stopped traffic and move into the intersection.
Both sides produced disinterested witnesses who testified that each party entered the intersection on a green light. Woods Eastland, a real estate agent who was driving twelve to fifteen feet behind the motorcycle at the time of the accident, testified that the light for the motorcycle was green. In fact, he said the light was still green when he stopped to get out of his car to render aid and assistance after the accident.
The defendants produced Esther Vaughn, who was eighty years old, who had stopped directly behind the Gas Company truck prior to the accident. The cross-examination centered on whether her vision to see the traffic light was obscured by the height of the truck. She testified that she stopped behind the truck when the light was red. She said that the light turned green and, at the time the truck began to pull out into the intersection, she *225 noticed the motorcycle pull in and hit the truck.
Appellant's theory of the case was that the driver of the Gas Company truck ignored the traffic light and that the three company employees would side with the company's position in their testimony. The remaining strategy was to discredit Esther Vaughn because she was the only "independent" witness for appellees. To this end, appellant hired an accident reconstruction expert who testified that it would have been impossible for Mrs. Vaughn to see the light from where she was located. He based this testimony on the fact that Mrs. Vaughn had told him that she had pulled up right behind the truck. Based on his calculations of the angles, he determined that she couldn't have seen the light herself and only thought that it was green because the truck in front of her started to move.
Appellant also attempted to impeach Mrs. Vaughn with what he considered to be a prior inconsistent statement; however, the trial court excluded this evidence, which action led to this appeal. Appellant attempted to introduce the testimony of D.R. Bradford, a Jackson police officer who investigated the accident, and through his proffered testimony would have testified that Mrs. Vaughn told him at the scene "that Mermelstein told her that he had the green light." The implication then was that Mrs. Vaughn did not really see the light, but, rather, formed her opinion only after Mermelstein had told her the light was green. The defendants objected to this testimony on the ground that they did not ask Mrs. Vaughn on cross-examination directly, "Did she tell Officer Bradford at the scene on the day of the accident that Mermelstein had told her that the light was green." The judge excluded this testimony.[1]

Analysis
The arguments of the parties on this point are rather straightforward and brief. Appellees argue that the testimony of Bradford was properly excluded as hearsay and that the testimony does not fit within any exception to the hearsay rule. Appellant, however, argues that the statement is not hearsay because it was not being offered for the truth of the matter asserted. As noted, appellant attempted to introduce a statement by Mrs. Vaughn to Officer Bradford that Mermelstein had told her that the light was green, the obvious implication being that she really did not see the light herself.
In Moffett v. State, 456 So.2d 714 (Miss. 1984) (Robertson, J.), this Court noted that:
It is hornbook law, firmly embedded in the case law of this state, that unsworn prior inconsistent statements may be used for impeachment of the witness' credibility regarding his testimony on direct examination. The prior inconsistent out-of-court statements made by one not a party may not be used as substantive evidence.[2] (emphasis added) (citations omitted).
Id. at 719. See also Brown v. State, 556 So.2d 338, 341 (Miss. 1990).
Because the statement is not being introduced as substantive evidence it is not being "offered for the truth of the matter asserted" but merely to show that the declarant made the statement. As such it is relevant regardless of its truth and it does not matter that the trier of fact is unable to ascertain the declarant's credibility. See generally 4 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 801(c)[01] at 82 (1990). See also Cooper v. State Farm *226 Fire & Cas. Co., 568 So.2d 687, 691 (Miss. 1990); Harrison v. State, 534 So.2d 175, 179 (Miss. 1988) ("The prior statements ... were offered not to prove the truth of the matter asserted, but as circumstantial evidence from which the jury could infer that the trial testimony ... was unreliable. Therefore, they were not hearsay").
In fact, appellees admit that, in principle, the proffered testimony would have been admissible under Miss.R.Evid. 613. However they offer two reasons why the proffer is not admissible in this case: first, appellant failed to prove that the statement was in fact inconsistent. It is generally held that a statement "is inconsistent if under any rational theory it might lead to any relevant conclusion different from any other relevant conclusion resulting from anything the witness said." Weinstein, ¶ 613[02] at 13. Admittedly, without the benefit of Vaughn's explanation as to the circumstances surrounding the statement, determining whether it was in fact inconsistent is difficult. But at least under this broad definition the statement was certainly inconsistent. See also Hale, Impeachment of Witnesses by Prior Inconsistent Statements, 10 So.Cal.L.Rev. 135, 161 (1937) ("the court in exercising its function of judicial control should be concerned only to find that one reasonable inference (out of two or more possible inferences) would be that of inconsistency").
Next, appellees argue that the proffer was inadmissible because appellant failed to lay a proper foundation for the extrinsic evidence. See Miss.R.Evid. 613(b). Appellees claim that because appellant failed to cross examine Mrs. Vaughn about a conversation with Officer Bradford he is barred by the rule from now introducing extrinsic evidence to establish that fact. Therefore it is necessary to determine what sort of foundation, if any, is necessary and when it must be laid.
Mississippi adopted the applicable federal rule verbatim, which states:
(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
Miss.R.Evid. 613(b). Numerous authorities have recognized that the traditional foundation requirements have been modified by the modern rule. Weinstein, ¶ 613[01] to [05]; S. Saltzburg & K. Redden, Federal Rules of Evidence Manual, 424-31 (3d ed. 1982); McCormick on Evidence, § 34 (3d ed. 1984). These authorities all note that the prior statement may be brought out by a second witness without prior inquiry of the witness who made it. It is only necessary that the impeached party have an opportunity to explain or deny the statement at some point during the trial. The comment to Miss.R.Evid. 613 provides:
Subsection (b) preserves the foundation requirement in the Queen's case with some modifications when impeachment is by extrinsic evidence. The traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness with an opportunity to explain and the opposite party an opportunity to examine the statement, with no specification of any particular time or sequence ...
Other states have decided that their section (b) of the rule should retain the requirement that this opportunity to explain continue to be prior to the introduction of the extrinsic evidence. For example, Minnesota adopted a rule identical to the federal rule except for the word "prior" before the "opportunity to explain or deny the same" in subdivision (b). The comment to the rule notes that the federal rule was altered in this way so as to preclude the need for extrinsic evidence if the witness admits making such a statement. See Minn. Stat. Ann. Evidence Rules, 613 (West 1979).
Similarly, this Court has held that once a witness admits making a prior inconsistent *227 statement, then extrinsic evidence should not be admitted. Foster v. State, 508 So.2d 1111, 1119 (Miss. 1987); Fuselier v. State, 468 So.2d 45 (Miss. 1985). In this case the plaintiff never gave Mrs. Vaughn the opportunity to explain or deny making such a statement because he never brought up the subject on cross-examination. Under federal practice this trial tactic is perfectly sound.[3] While federal authority on the rules is not binding, this Court has repeatedly recognized that such authority is a persuasive aid in interpretation when the rules are identical, as here. McGee v. State, 569 So.2d 1191, 1196 (Miss. 1990); Foster, 508 So.2d at 1117 n. 3 (Miss. 1987); Brown v. Credit Center, 444 So.2d 358 (Miss. 1984).
However, several recent cases from this Court have noted, citing pre-rules cases, that before one can impeach with a prior inconsistent statement a proper predicate must be laid. See e.g., Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 691 (Miss. 1990); Harrison v. State, 534 So.2d 175, 179 (Miss. 1988). These cases seem to ignore the new rule and the substantial latitude it gives an attorney seeking to impeach with prior inconsistent statements. However, none of these cases deals directly with the issue in this case: whether an attorney can impeach with extrinsic evidence without giving the impeached party the opportunity to explain prior to the extrinsic evidence. For that reason, these prior decisions are not in direct conflict with the rule as it has been interpreted in the federal context and as we interpret it in this case. Therefore, appellant's failure to broach this subject with Mrs. Vaughn during cross-examination should not have precluded him from raising the apparent inconsistency by way of extrinsic evidence and the lower court erred in excluding the prior inconsistent statement of Mrs. Vaughn.
Also, the defendant argues that the plaintiff should not have been allowed to introduce this evidence because of inadequate discovery responses. In June of 1990, the parties filed an agreed order modifying the record to include the fact that the defendant objected in chambers to the plaintiff being allowed to call any witness first mentioned in the supplemental response to the interrogatories and ask questions regarding any subject matter first mentioned in the supplemental responses. Originally, the plaintiff listed Bradford as a witness who would "testify concerning his investigation of the scene of the accident." On the morning of trial, appellant supplemented the response to include the fact that Bradford would "refute or offer rebuttal against any testimony that the light was green for the defendant." This supplemental response led to the defendant's in-chambers objection.[4] The record does not indicate how the judge ruled on this objection, but, because it is not mentioned anywhere in the record, it is clear that this is not why the evidence was excluded.[5] Apparently, appellees want this Court to conclude that the trial court abused its discretion by not excluding the testimony on these grounds. In this case, however, both parties had equal access to the accident report that contained Mrs. Vaughn's statement. Furthermore, accepting appellant's *228 statement as true, i.e., that the parties discussed the nature of Officer Bradford's testimony extensively, it seems that appellees could hardly have been surprised by this testimony. Under these facts it would be inappropriate to exclude the impeachment evidence and the trial court abused its discretion.
The final issue appellant raises on appeal is that the verdict was against the overwhelming weight of the evidence. Suffice it to say, where, as here, the case is essentially a swearing contest, such an assignment of error is misplaced.
The judgment of the lower court is reversed and remanded.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
BANKS, J., not participating.
NOTES
[1] The trial judge originally said that he excluded the testimony because Officer Bradford did not seem to remember Mrs. Vaughn. Originally he didn't, but, after refreshing his memory by looking at the accident report he filled out, he claimed to remember who she was. The judge apparently still wasn't satisfied but, in response to a question from plaintiff's counsel, stated that the statements were also hearsay. The defendant's objection to the testimony had nothing to do with Bradford's memory. Regardless, both parties essentially ignore the memory issue on appeal and specifically address the hearsay issue.
[2] In certain limited circumstances some prior inconsistent statements are admissible as substantive evidence. See Miss.R.Evid. 801(d)(1).
[3] Oddly enough, one of the federal cases that apparently disapproves of this practice is from the Fifth Circuit. U.S. v. Leslie, 759 F.2d 366 (5th Cir.1985), vacated on other grounds, 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987). However this case has been recognized as an aberration. Wammock v. Celotex Corp., 793 F.2d 1518, 1522 n. 2 (11th Cir.1986), withdrawn on other grounds, 835 F.2d 818 (11th Cir.1988).
[4] Miss.R.Civ.Pro. 26(b)(1) provides in part: The discovery may include the ... identity and location of persons ... (ii) who may be called as witnesses at the trial; and the oral testimony of witnesses.
[5] In some circumstances, this Court has excluded testimony of witnesses for the party's failure to name them prior to trial. Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986); Harris v. General Host Corp., 503 So.2d 795 (Miss. 1986). Also, this Court recently considered whether an expert witness should be allowed to testify after the proponent provided only a very general summary of the subject matter of the expert testimony. State Highway Comm'n v. Havard, 508 So.2d 1099 (Miss. 1987). The Court concluded that in the absence of other affirmative acts by the state to gain additional discovery on the matter the witness' testimony was properly admitted even though the summary was "bare bones".