## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00517-SCT

*JOSEPH P. MARCUM*

*v.*

*MISSISSIPPI VALLEY GAS COMPANY, INC. AND L.M. MERMELSTEIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/24/92 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | JOHN D. GIDDENS |
| | ALLEN G. WOODARD |
| ATTORNEY FOR APPELLEE: | F. HALL BAILEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 4/4/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/25/96 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On March 17, 1992 appellant Joseph P. Marcum filed a Plaintiff's Motion for Summary Judgment which was denied by Judge Breland Hilburn on April 6, 1992. At the conclusion of the subsequent trial, the jury awarded Marcum $2,000 after assessing his damages at $20,000 and finding him to be ninety percent at fault and Mississippi Valley Gas driver L. M. Mermelstein to be ten percent at fault. On April 24, 1992, Judge Hilburn issued a Judgment echoing the jury verdict and holding Mississippi Valley Gas and Mermelstein jointly and severally liable. That same month Marcum filed a Plaintiff's Motion for New Trial and Additur, which was denied in May. On May 11, 1992, Marcum appealed to this Court giving as his only issue on appeal whether the lower court erred in not granting his motion for summary judgment based on the doctrine of collateral estoppel.

¶2. Finding that collateral estoppel does not apply, we affirm.

### FACTS

¶3. On the morning of November 20, 1987, Joey Marcum and Jay Glass decided to skip school. With the

seventeen-year-old Marcum driving and the sixteen-year-old Glass holding on behind, the pair took Joey's motorcycle to Monroe, Louisiana to visit Jay's mother. After having lunch in Monroe, Marcum and Glass began their trip back home to Byram. The return trip led the boys through Jackson, with the two of them reaching the Jackson city limits a little after three in the afternoon. As they headed southward to Byram on Terry Road, Leo Mermelstein approached the intersection of Woody Drive and Terry Road from the west driving a Mississippi Valley Gas truck. At the time of the events of this case, Mermelstein had been working for the gas company for thirty-three years and had been a gas company truck driver for twenty-eight years.

¶4. Mermelstein approached the intersection and, noticing that the light was red, stopped his truck and waited for the signal to change. After the light turned green, he looked both ways and entered the intersection, planning to turn left and drive northward on Terry Road. However, before he began his turn, he heard the sound of Marcum's advancing motorcycle and immediately stopped. According to Mermelstein, Marcum did not slow down at any time. He also stated that , "I noticed the driver and the passenger both tilted their heads down and tried to make the turn away from the truck; and when they did, the motorcycle went down and slid into that right front bumper as you're looking at it, at the side of the bumper."

¶5. Mississippi Valley Gas employee Lee Lewis was riding in the truck with Mermelstein that day. He testified that when the light changed,

> Well he [Mermelstein] started to pull off. He pulled off and looked out to the side and there come a motorcycle. I said, "It don't look like he's gonna stop." And okay, he jammed on his brakes, and about that time the motorcycle swerved around and hit the side of the truck.

Furthermore, eyewitness Esther Vaughn, who was stopped behind the Mississippi Valley Gas truck on Woody Drive as it waited at the intersection, testified that:

> I came to a complete stop. And I went to -- I sat there to wait for the light, and in just a short time the light turned green. And when the light turned green, I looked north to see if there was anybody coming, and I saw these boys on the motorcycle. And by the time I looked back, the truck had pulled out into the street. And I think they tried to go around the truck, but they didn't make it.

Both Marcum and Glass were injured in the collision.

¶6. Marcum filed suit against Mississippi Valley Gas and Mermelstein in the Circuit Court of Hinds County on April 1, 1988. The case (hereinafter "Marcum I") went to trial before Judge Hilburn on October 9-11, 1989, and on October 12, 1989, a judgment was entered for the defendants. Marcum appealed to this Court on December 15, 1989. In August 1991 this Court reversed the jury's decision and remanded the case for a new trial. ***Marcum v. Mississippi Valley Gas Co., Inc.,*** 587 So. 2d 223 (Miss. 1991).[(1)]

¶7. At this same time, Glass was suing Mississippi Valley Gas, Mermelstein, and Marcum. A trial was held before Judge Fred Banks on November 27, 1989, in the Circuit Court of Hinds County. The December 5, 1989, judgment quotes the jury's findings:

> We, the jury, find for the Plaintiff and against the Defendants, Leo Mermelstein and Mississippi Valley Gas, and assess his damages at $74,000.00.

> We, the jury, find for the Defendant, Joseph P. Marcum.

Mississippi Valley Gas did not appeal this verdict.

¶8. By the spring of 1992, proceedings in the second Marcum case (hereinafter *Marcum II*) had begun. On March 17, 1992, Marcum filed a Plaintiff's Motion for Summary Judgment. According to this motion, the Glass jury's holding that Mermelstein and Mississippi Valley Gas were negligent and that Marcum was not constituted collateral estoppel and precluded the relitigation of the parties' negligence. This motion was denied by Judge Hilburn on April 6, 1992.

¶9. At the April 1992 trial, Marcum and Glass and a witness, who was positioned directly behind the motorcycle on Terry Road, all testified that the boys had the right of way when they entered the intersection. Nevertheless, the jury found Marcum to be ninety percent at fault and Mermelstein to be ten percent at fault and awarded Marcum $2,000 after assessing his damages at $20,000. He appealed on May 11, 1992.

## LAW

¶10. Marcum's motion for summary judgment was based on the rule of collateral estoppel. Specifically, Marcum hoped to make the outcome in the Glass case preclusive as to the issue of liability in *Marcum II*. In the Glass case, James Glass was the plaintiff while Marcum, Mississippi Valley Gas, and L.M. Mermelstein were co-defendants. In *Marcum II*, Marcum is the plaintiff and Mississippi Valley Gas and L.M. Mermelstein are again co-defendants. The requirements for both collateral estoppel and its sister doctrine res judicata are found in *Dunaway v. W.H. Hopper and Associates, Inc*., 422 So. 2d 749 (Miss. 1982):

> Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. . . .

> When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action. And, collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated.

*Id*., at 751 (citations omitted).

¶11. *State Ex Rel. Moore v. Molpus*, 578 So. 2d 624 (Miss. 1991), also discusses collateral estoppel. "At its core, the rule precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity."

¶12. This case involves the offensive use of collateral estoppel. Although such a use of the doctrine is permitted, "the rule is neither mandatory nor mechanically applied." *Jordan v. McKenna*, 573 So. 2d 1371, 1375 (Miss. 1990). Furthermore, "[M]ore fundamental, the doctrine of collateral estoppel must never be seen as anything other than an unusual exception to the general rule that all fact questions should be litigated fully in each case," and "[w]here there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied." *Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District*, 437 So. 2d 388, 397 (Miss. 1983).

¶13. This Court has also stated that:

> [C]ollateral estoppel must be applied cautiously on an ad hoc basis in order to preserve the critical component of due process - i.e., the requirement that every party have an opportunity to fully and fairly litigate an issue. More specifically, the facts of each case should be perused in order to determine whether the issue - of which a party seeks to collaterally relitigation - was fully and fairly tried. . . .

*McCoy v. Colonial Baking Co., Inc.*, 572 So. 2d 850, 854 (Miss. 1990).

¶14. Finally, the United States Supreme Court has decided that federal trial courts should be granted broad discretion to determine when offensive collateral estoppel should be used. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). This rule of broad discretion is also appropriate for the trial courts of Mississippi.

¶15. Much has been written in our decisions about collateral estoppel, perhaps at times overmuch, but this much should be clear: in the absence of passing technical muster of the previous action involving identical parties, identical legal issues, and the same facts required to reach a judgment, it cannot be applied. And, even where it arguably meets a technical muster, "the rule is neither mandatory nor mechanically applied." *Jordan v. McKenna, supra*, 573 So. 2d at 1375.

¶16. Marcum's first trial before a jury resulted in a verdict and judgment for the defendants. Then, there was the trial in which Glass was plaintiff, and Marcum and Mississippi Valley and Mermelstein defendants, in which there was a jury verdict for the plaintiff Glass against Mississippi Valley and Mermelstein, but in favor of Marcum. Later, this Court reversed and remanded Marcum's first case, but not on the sufficiency of the evidence.[(2)]

¶17. Therefore, when Marcum on March 17, 1992, filed his motion for summary judgment based upon collateral estoppel, the circuit judge was faced with not one, but two prior jury verdicts which reached contrary results. While it is true that a jury in one cause of action found in favor of Marcum in the suit of Glass, in which Marcum was a co-defendant with Mississippi Valley and Mermelstein, another jury in the identical suit had found in favor of Mississippi Valley and Mermelstein, and this Court on appeal of that case did not question the sufficiency of the evidence. While it is certainly true that collateral estoppel could not be applied against Marcum, because upon appeal his case had been reversed and remanded for a new trial, there was more of a common sense basis to apply it against Marcum than against Mississippi Valley and Mermelstein. In any event, two separate juries had reached contrary conclusions as to the negligence of both Mississippi Valley Gas and Mermelstein.

¶18. The test, which is generally accepted among the jurisdictions, is to determine whether the parties (Marcum and Valley Gas) were adversaries in fact in the prior litigation. This test is adopted by the Restatement (Second) of Judgments (1982). The rule is:

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.

Restatement (Second) of Judgments, § 38 (1982) (emphasis added).

¶19. The Comment to Section 38 states offensive collateral estoppel may be appropriate where:

> . . . [P]arties aligned on the same side in the pleadings may be drawn into controversy between themselves on an issue that is at the same time material to their rights or obligations regarding their common adversary and to rights and obligations subsisting between them. Thus, defendants sued by a plaintiff who has stated a claim against them in the alternative may defend not only by disputing the plaintiff's case but by adducing proof and argument against each other. . . .

Restatement (Second) of Judgments, § 38, Comment (a) (1982).

¶20. Thus, "the test of adversary confrontation is a practical one, to be measured against the whole record of the prior litigation." Wright and Miller, **Federal Practice and Procedure**, § 4450 at 420 (1981). In the earlier Glass case, Marcum and Valley Gas did not have this type of adversarial relationship. In the Glass case, Marcum and Valley Gas did not raise any cross-claims between themselves. Nor was there any motivation to litigate any rights and obligations subsisting between them as Marcum and Mississippi Valley Gas. The reason is obvious, these two parties had completed the trial of their suit less than two months before the Glass case was tried.

¶21. It is a serious matter indeed, implicating due process considerations, to say to a litigant he cannot have his day in court, and collateral estoppel should only be applied in the interest of justice and judicial economy. Where there is some question about either, it should not be applied. Clearly, it is a discretionary matter with the trial court whether he will invoke collateral estoppel against a party litigant, and his refusal to do so should only be reversed when there has been an obvious abuse. We find no abuse of discretion here in the circuit judge's denial of Marcum's motion for summary judgment.

¶22. In *Schwartz v. Public Administrator of the County of Bronx, et. al.*, 24 N.Y.2d 65, 246 N.E.2d 725, 298 N.Y.S. 2d 955 (1969), the Court, in setting forth some of the factors to be considered in such cases, aptly observed:

> A decision whether or not the plaintiff drivers had a full and fair opportunity to establish their nonnegligence in the prior action requires an exploration of the various elements which make up the realities of litigation. A comprehensive list of the various factors which should enter in a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigants.

*Schwartz*, 246 N.E.2d at 729.

¶23. And, "No one would contend that the doctrine of collateral estoppel should be applied rigidly." *Id.* at 730.

¶24. For, as noted in the dissent:

> Law is more than a congeries of neat logical packages quite consistent with each other. It is more essentially an on-going method of reaching pragmatic approximations of fairness in myriads of human

situations where absolutes of right and wrong either do not exist at all or rest on ideas only theoretically related to real life situations.

*Id.* at 732.

¶25. The motion of appellee to supplement the record, being unnecessary to the disposition of this case is dismissed as moot. Finding no error, we affirm.

¶26. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING**:

¶27. Because the majority finds that the trial judge was correct in denying the motion for summary judgment, and because offensive collateral estoppel is alive and well under Mississippi law, as well as with the United States Supreme Court, I dissent.

¶28. Collateral estoppel precludes parties from relitigating essential issues which were determined in a former action even though the former action involved a different cause of action. *Dunaway v. W.H. Hopper & Assocs.*, 422 So. 2d 749, 751 (Miss. 1982); *see also* *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995)(defining essential elements of doctrine of collateral estoppel). In this case, the essential issue of liability was determined in Glass's companion case. The issue of liability, once litigated cannot now be retried under the aegis of comparative negligence. Therefore, Marcum's motion for summary judgment should have been granted and the jury's $20,000.00 verdict should be allowed to stand.

¶29. The majority's reliance on *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979), is misplaced since the *Shore* Court held that the plaintiff was entitled to summary judgment on the basis of offensive collateral estoppel. In reaching its conclusion that trial courts should have broad discretion in determining whether offensive collateral estoppel should apply, the United States Supreme Court identified only two arguments against its use: the likelihood of promoting litigation and unfairness to the defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. at 329-31. The *Shore* Court ultimately upheld partial summary judgment for the plaintiff on the issues previously decided against the defendant because "none of the considerations that would justify a refusal to allow the use of offensive collateral estoppel [was] present."*Id*. at 332.

¶30. In the case at bar, the danger of additional plaintiffs adopting a "wait and see" attitude, hoping to recover easily against the unsuccessful defendants, does not exist. Glass, Marcum, and Mississippi Valley Gas are the only three parties involved in the accident. In fact, Marcum never had a "wait and see" attitude as he was involved in litigation against Mississippi Valley Gas prior to the present action. Because Marcum's case was awaiting appeal at the time, it was certainly foreseeable to Mississippi Valley Gas that future litigation against Marcum would be necessary. Permitting the use of offensive collateral estoppel in the case at hand would actually promote judicial economy. Thus, the first argument against use of offensive collateral estoppel is not applicable to the facts of this case.

¶31. In the *Shore* case, the Court relied on specific concrete factors to assess the fairness to the defendant in permitting the plaintiff's use of offensive collateral estoppel. The factors included the defendant's incentive to litigate the issue fully and vigorously the first time, and the existence of procedural opportunities available to the defendant in the second action that might lead to a different result. *Id.* at 332.

¶32. Mississippi Valley Gas certainly had equal incentive to vigorously defend against Glass; it stood to lose just as much, if not more, in a judgment for Glass. In both cases, Mississippi Valley Gas had as its main incentive the desire to limit its liability as much as possible. Its liability, as well as Marcum's, was an essential element to the trial. Nor were there any procedural opportunities in the retrial against Marcum that would likely have lead to a result different from the trial against Glass. The Glass trial was fully litigated followed by a jury decision. Furthermore, Marcum's liability was a dominant issue in the Glass trial since he was a named defendant. In that trial, Marcum was potentially blameworthy under the law since there was evidence that Marcum was possibly speeding.

¶33. The Fifth Circuit, in *Nations v. Sun Oil Co.*, 695 F.2d 933, 938 (5th Cir.), *cert. denied*, 464 U.S. 893 (1983), concluded that the doctrine of collateral estoppel was applicable to the issue of negligence since a jury had previously found the defendant one hundred percent negligent with respect to two other individuals killed in the same accident. Offensive collateral estoppel applied because there was no proof of purposeful delay and the defendant had a "full, fair and complete opportunity to litigate the negligence issue" during the previous trials. *Id.*; *see also Johnson v. United States*, 576 F.2d 606, 615 (5th Cir. 1978) (finding offensive collateral estoppel applicable in subsequent action since charges of negligence in both cases involved identical circumstances). Likewise, Mississippi Valley Gas should be estopped from relitigating the issue of negligence where the subsequent action involved the same accident.

> [W]here a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive. . . [against the unsuccessful party] in a subsequent suit on a different cause of action.

*Garraway v. Retail Credit Co.*, 244 Miss. 376, 141 So. 2d 727, 730 (1962). The trial court stepped beyond its scope of allowable discretion in determining that it could deviate from this proposition. Offensive collateral estoppel should have been applied and summary judgment granted to Marcum on the issue of liability since it was fully litigated and determined by a valid and final judgment. The majority is not persuasive in its reliance on a conflicting verdict which was the product of evidentiary errors at trial. Accordingly, I dissent.

1. It should be noted that this case was overruled by this Court in **Whigham v. State**, 611 So.2d 988 (Miss. 1992). **Whigham** does not, however, affect the case at bar.

2. This Court has since found that the basis for reversing in *Marcum v. Mississippi Valley Gas Company and Mermelstein*, 587 So. 2d 223 (Miss. 1991), was itself flawed, and that decision was overruled in *Whigham v. State*, 611 So. 2d 988 (Miss. 1992). In the absence of this Court's own error in the first appeal, there would have been no second trial for Marcum.